23-MJ-8315

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Jeffrey S. Lopes, having been duly sworn, hereby depose and state:

**<u>AGENT BACKGROUND</u>**

1.     I am employed as a Detective with the City of Boston (Massachusetts) Police Department.  I have been employed by the Boston Police Department since 2013 and I am currently assigned to the Crimes Against Children Unit where I investigate child physical abuse, sexual abuse, and the internet exploitation of children.  While employed by the Boston Police Department, I have investigated state criminal violations related to, among other things, physical and sexual abuse against children, as well as the on-line sexual exploitation of children.  As part of my duties, I am authorized to investigate violations of Massachusetts laws, including criminal violations relating to child exploitation, child sexual abuse material, coercion and enticement.   I have received training in the area child exploitation.  Through my training and experience, I have had the opportunity to observe and review numerous examples of child sexual abuse material in all forms of media including digital media.

2.      I have a Doctor of Law and Policy degree from Northeastern University. I also have a Bachelor's degree in Sociology/Crime and Justice Studies and a Master's degree in Public Administration, both from Suffolk University.

3.     I have been a detective in the Crimes Against Children Unit at the Boston Police Department since April 2021.  As a detective in the Unit, I am also a member of the FBI Child Exploitation Human Trafficking Taskforce where I routinely conduct joint investigations with the Human Trafficking Unit of the Boston Police Department.  During those investigations, I have had an opportunity to participate in or review the interviews of various minors who are either

confirmed or suspected victims of human trafficking or child exploitation.  I have also had the opportunity to participate in the execution of warrants related to human trafficking and review forensic evidence recovered during the course of human trafficking investigations.  Additionally, I have had the opportunity to participate in or review of the interviews of multiple suspected or confirmed human traffickers.

4.       Since August 2021, I have been appointed as a Task Force Officer with the Federal Bureau of Investigations.  As a TFO, I am authorized to investigate violations of United States laws, including but not limited to violation of 18 U.S.C. § 1591(a)(1) and 18 U.S.C. § 2251, and to execute warrants issued under the authority of the United States.

5.       I have personally participated in the investigation of this case.  I am familiar with the facts and circumstances of this investigation from oral and written reports made to me by other agents of the FBI, and other federal, state and local law enforcement agencies; oral and written reports from agencies referenced herein; and conversations and meetings with victims and witnesses; and my own personal participation in the investigation, including witness interviews.

**PURPOSE OF AFFIDAVIT**

6.       This affidavit is submitted in support of applications for a criminal complaint charging CARLOS LOPEZ (AKA Rene Carlos Arias-Lopez, hereinafter LOPEZ) with Attempted Sex Trafficking of a Child, U.S.C. §§ 1591(a)(1), (b)(2), and 1594(a), and with a warrant for his arrest.

7.       This affidavit is based on my personal investigation and investigation by others, including federal and state law enforcement officials whom I know to be reliable and trustworthy. The facts contained herein have been obtained by conferring with other law enforcement officers and examining evidence obtained in the course of the investigation as well as through other means.

This affidavit does not include every fact known to me about this investigation, but rather only those facts sufficient to establish probable cause.

## STATEMENT OF FACTS

*INITIAL 911 CALL & POLICE RESPONSE*

8.      Shortly before midnight June 1, 2023, the Boston Police Department received a 911 call that a 14-year-old female (hereinafter "MINOR 1") was in danger in an apartment located in Boston, Massachusetts (hereinafter the "Dorchester Apartment").  Specifically, the 911 call stated that there was an "overage guy laying with an underage girl" at the Dorchester Apartment.  The caller indicated that she saw video and photos showing MINOR 1 drinking and that she had a call with MINOR 1 who was drinking with an older man.[1]  The caller also indicated that MINOR 1's best friend (hereinafter "MINOR 2") is 14 years old and in a sexual relationship with a man in his 20s who lives on the third floor of the Dorchester Apartment.  The caller was MINOR 1's 13-year-old sister (hereinafter "MINOR 3").

9.      On June 1, 2023 at 12:32am, Boston Police officers responded to the Dorchester Apartment to attempt to locate and ensure the well-being of MINOR 1.  Upon their arrival, they located a 28-year old adult male ("PERSON 1"), a second adult male, and a juvenile female (hereinafter "MINOR 2") on the front porch of the Dorchester Apartment.  The adult males appeared to be attempting to move a mattress out of the apartment and onto the front porch. Officers asked MINOR 2 her name to ascertain if she was MINOR 1.  The juvenile female kept looking toward PERSON 1.  She appeared intoxicated, refused to identify herself, and began

---

[1] During a follow-up interview with MINOR 3, MINOR 3 indicated that on the night she called the police, she had received a video on WhatsApp that depicted her older sister, MINOR 1, passed out with MINOR 2 next to her and bottles of alcohol all around her.  MINOR 3 did not know from whose account the video was sent.

pacing back and forth on the front porch.  When officers attempted to identify MINOR 2, she walked back inside the apartment and ran up the stairs to the third floor.

10.      Having not yet identified or ascertained the safety of MINOR 2, officers followed her inside of the residence and up to the third floor.  MINOR 2 knocked on a bedroom door, opened the bedroom door, and yelled, "the police are here, your sister called them."

11.      Once MINOR 2 opened the bedroom door, officers observed a second juvenile female, ultimately identified as MINOR 1, laying in a bed and wearing a red sweatshirt and no pants or underwear.  Officers observed Carlos LOPEZ seated on the same bed, fully clothed with a beer in his hand.  Officers noticed numerous beers throughout the bedroom.

12.      MINOR 1 exited the bedroom and immediately appeared to be heavily intoxicated. MINOR 1 was unsteady on her feet and had difficulty communicating with officers.

13.      As soon as MINOR 1 exited the bedroom, LOPEZ closed the bedroom door on uniformed officers and locked himself in a bedroom.  LOPEZ later told officers that it was his bedroom, which was confirmed by MINOR 1.

14.      MINOR 1 was interviewed briefly on scene before being transported by ambulance to the hospital.  MINOR 1 said that she was 14 years old and knew LOPEZ through her friend, MINOR 2.  She stated that she was not engaged in sexual contact, rather she was sleeping, before officers arrived.  MINOR 1 indicated that she did not know who took her pants off or when they came off, just that when she woke up her pants were no longer on her.  She estimated that she had consumed three beers prior to the arrival of officers.

15.      After barricading himself in his bedroom for approximately twenty minutes, LOPEZ opened the bedroom door for police and was placed in handcuffs.  When asked what was going on his bedroom, LOPEZ indicated that PERSON 1 had introduced him to MINOR 1 so that

he could engage in sexual intercourse with her.  Specifically, in exchange for sex with MINOR 1, LOPEZ agreed to pay PERSON 1 $100.  LOPEZ indicated that he "tried" to do something with the girl, but that he was not yet able to do it.  LOPEZ indicated that he had not yet paid PERSON 1 the $100 that he owed him for the female.  During a subsequent interview at the police station, LOPEZ further indicated that the female who was found in his room was kissing and caressing him and looking for his money.  He stated that PERSON 1 had initially brought both girls, MINORS 1 and 2, into his bedroom.

16.     Officers noted and photographed over a dozen empty beer bottles in LOPEZ'S bedroom, as well as a pair of female underwear and shorts on his bed.

*FORENSIC INTERVIEW OF MINOR 1*

17.     In July of 2023, MINOR 1 was forensically interviewed.  Below is a summary of portions of what MINOR 1 disclosed during that interview.

18.     MINOR 1 is best friends with MINOR 2, who is also 14 years old and was in an ongoing romantic and sexual relationship with PERSON 1 on June 1, 2023.

19.     MINOR 1 and MINOR 2 would often spend time with PERSON 1 on the third floor of the Dorchester Apartment, a residence with approximately 5 bedrooms where multiple men, including PERSON 1 and LOPEZ, were living at the time.

20.     Prior to June 1, 2023, MINOR 1 had spent the night at the Dorchester Apartment and had slept in PERSON 1's bedroom with MINOR 2 and PERSON 1.

21.     PERSON 1 and other individuals at the house knew that MINOR 1 and MINOR 2 were "minors."  MINOR 1 indicated that MINOR 2 being a minor was "the first thing [PERSON 1] knew about [MINOR 2]…he still loved her for it though."

22.     PERSON 1 and others would often drink Modelos (beer)[2] at the apartment, but PERSON 1 would not typically allow MINOR 1 and MINOR 2 to drink because they were minors.

23.     On May 31, 2023, PERSON 1 went to the Dorchester Apartment to move some of his belongings out to a newly acquired apartment.   MINOR 1 and MINOR 2 also went to the Dorchester Apartment that day and were hanging out with several individuals, including LOPEZ.

24.     LOPEZ offered MINOR 1 and MINOR 2 an alcoholic beverage.  MINOR 2 and MINOR 1 had 2-3 bottles of beer each that had been offered to them by LOPEZ.  At that point, MINOR 2 and PERSON 1 went outside and MINOR 1 remained inside with LOPEZ.

25.     LOPEZ continued to offer MINOR 1 drinks.  Although MINOR 1 said "no," LOPEZ ultimately gave MINOR 1 5-6 bottles of what she believed to be Modelo beer.

26.     MINOR 1 indicated that after consuming multiple beers provided to her by LOPEZ, she began to feel tired and dizzy, her vision was blurry, and her head was spinning.  She indicated that was the first time she had ever gotten drunk and every time she tried to stand up, she stumbled.

27.     LOPEZ told the other male in the room at that time to leave and told MINOR 1 that "he was going to pay [her] something."  When he said this, LOPEZ was sitting on his bed and MINOR 1 was sitting in a chair in the room.  LOPEZ specifically said that he liked MINOR 1 and that he would give her money afterward.  MINOR 1 was drunk and dizzy.  She reported that she does not remember what happened after LOPEZ offered to pay her.

28.     When MINOR 1 woke up the first time, she was lying on the bed with her torso on the bed and her legs off the bed.  LOPEZ was in between her legs "mad" because he had "kicked a beer over by accident."  LOPEZ was shirtless.  MINOR 1 felt "blurry", her head hurt, and the

---

[2] I am aware that Modelo, the beer that was used to intoxicate MINORS 1 and 2, is brewed in Mexico and distributed in interstate and foreign commerce.

room was spinning.  She closed her eyes.  The next time she woke up, her pants and her underwear

were off her body.

29.     MINOR 1 reported that she remembered the police arriving.  She exited the

bedroom and LOPEZ locked the door behind her.  MINOR 1 reported that LOPEZ never actually

gave her money.  MINOR 1 was transported via ambulance to Boston Medical Center for

treatment.

***FORENSIC INTERVIEW OF MINOR 2***

30.     In August 2023, MINOR 2 was forensically interviewed.  Below is a summary of

portions of what MINOR 1 disclosed during that interview.[3]

31.     PERSON 1 told MINOR 2 that he was 25 years old, but she later learned he was

28 when she saw an identification card that included his date of birth.

32.      MINOR 2 told PERSON 1 that she was 14 years old.

33.     According to MINOR 2, she and PERSON 1 first met in or around April 2023.  She

indicated that PERSON 1 messaged MINOR 2 on WhatsApp after she broke up with a male known

to PERSON 1 and demanded to know the reason for the breakup.[4]  PERSON 1 subsequently asked

MINOR 2 to meet up with him, which they did.

---

[3] Neither this summary nor the summary of the other forensic interview above is intended to be a complete or verbatim recounting of what was conveyed during the interview.  Both are intended to be merely abridged summaries of certain portions of the interviews; there is other content that is not summarized herein.

[4] I am aware that WhatsApp is a private messaging and calling application that advertises itself as a platform on which users can message privately with end-to-end encryption that adds additional layers of protection to all conversations.  WhatsApp provides for Chat lock features to password protect personal chats, disappearing messages to control how long messages remain on the platform before disappearing.  WhatsApp can be accessed on Android devices, iPhones, Mac computers, PC, and on the internet.

34.     After she met PERSON 1 in person, MINOR 2 began to spend time with PERSON 1 and his friends.  MINOR 2 indicated that she hung out at PERSON 1'S house several times.  She also continued to communicate with PERSON 1 via phone as well.[5]  MINOR 2 indicated that the phone that she and MINOR 1 would use was an Android that she had purchased at the Target store at South Bay Center in Dorchester, Massachusetts.

35.     MINOR 2 indicated that, in addition to messaging her on her phone, PERSON 1 friended her on Facebook, and he also was active on SnapChat and TikTok.  MINOR 2 provided the name associated with PERSON 1's Facebook account.

36.     MINOR 2 indicated that on the night of May 31, 2023, she was at PERSON 1'S house waiting for him to get home because he had promised to buy her and MINOR 1 food.  PERSON 1 arrived home and they were hanging out with other males in the house.  MINOR 1 began drinking alcohol with a male they had just met that day, later identified as Carlos LOPEZ.  MINOR 2 indicated that everyone was drinking Modelo beer and that MINOR 1 was extremely drunk.  MINOR 2 indicated that LOPEZ was very awkward and was staring at her.  LOPEZ was also talking to MINOR 1 and had a conversation in Spanish with PERSON 1 before he left with MINOR 1.

37.     MINOR 2 indicated that when the police arrived, MINOR 1 was upstairs with LOPEZ with no pants on.

**CONCLUSION**

38.     As described above, on or about May 31, 2023, in the District of Massachusetts, CARLOS LOPEZ did knowingly, in and affecting interstate commerce, attempt to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit MINOR 1, knowing

---

[5] MINOR 2 indicated that PERSON 1 was trying to reach MINOR 1 through her.

that MINOR 1 had not attained the age of 18 years and would be caused to engaged in a commercial

sex act.

39.     Based on the foregoing, I respectfully submit that there is probable cause to support

a criminal complaint charging CARLOS LOPEZ with Attempted Sex Trafficking of a Child,

U.S.C. §§ 1591(a)(1), (b)(2), and 1594(a).

*Jeffrey S. Lopes /by Paul G. Levenson*
Jeffrey S. Lopes
Boston Police Department

Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by phone, on this 22nd day of September 2023
at Boston, MA.

_____
HONORABLE PAUL LEVENSON
UNITED STATES MAGISTRATE JUDGE