UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | )    Docket No.: 23-MJ-08315-PGL |
| | ) |
| CARLOS LOPEZ | ) |
| AKA RENE CARLOS ARIAS-LOPEZ | ) |
|     Defendant. | ) |
| | ) |

_____

**CARLOS LOPEZ'S RESPONSE TO THE GOVERNMENT'S BRIEFING ON
THE IMPACT OF THE INTERSTATE COMMERCE CLAUSE
ON 18 U.S.C. § 1591**

During the probable cause hearing held on October 5, 2023, the Court asked the parties to brief the following issues:

(1) Whether mere presence or possession of foreign beer by a minor satisfies the interstate or foreign commerce element of 18 U.S.C. § 1591(a)(1).

(2) Whether the statement, "I will pay you after," is sufficient to meet the definition of a "commercial sex act," as set forth in 18 U.S.C. § 1591(e)(3).

In its responsive briefing, the Government has raised the additional issue whether the interstate commerce requirement of § 1591 is satisfied because the violation of the statute is alleged to have taken place in Mr. Lopez's residence, which he rents rather than owns.

**ARGUMENT**

**I.**     **Elements of the charged offense**

1

Mr. Lopez is charged with violation of 18 U.S.C. §§ 1591(a)(1), (b)(2).[1] He may only be convicted of violating this statute if the Government proves beyond a reasonable doubt:

> (1) that Mr. Lopez's acts were in or affecting interstate or foreign commerce;
>
> (2) that Mr. Lopez knowingly recruited, enticed, harbored, transported, provided, advertised, obtained, maintained, patronized, or solicited Minor 1 to engage in a commercial sex act, defined in 15 U.S.C. § 1591(e)(3) as "any sex act, on account of which anything of value is given to or received by any person";
>
> (3) that Mr. Lopez knew or recklessly disregarded the fact that Minor 1 had not attained the age of 18 years and would be caused to engage in a commercial sex act;[2]
>
> (4) that Mr. Lopez's actions constituted a "commercial sex act."

*United States v. Sebastian*, No. 20-cr-10170-DJC, 2023 WL 2187895, at *4 (D. Mass. Feb. 23, 2023), quoting 18 U.S.C. §§ 1591(a)(1), (e)(3). Per the Government's recent briefing, the Government alleges that Mr. Lopez violated the statute because he

---

[1] 18 U.S.C. § 1591(a) provides in relevant part:

> "Whoever knowingly – (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; . . . knowing, or . . . in reckless disregard of the fact, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

18 U.S.C. § 1591(b)(2) provides the punishment for violations of § 1591(a)(1) with a minor who has attained the age of 14 years but who has not yet attained the age of 18 years at the time of the offense.

[2] The Government does not allege that Mr. Lopez violated the statute by way of "advertising." However, Mr. Loepz notes that, in the case of advertising, it is not enough for the government to prove reckless disregard. Instead, the government must prove that a defendant had actual knowledge that a minor had not attained the age of 18 years and would be caused to engage in a commercial sex act.f

"enticed, obtained, recruited, and harbored [Minor 1] to engage in commercial sex." *Government's Briefing re Commerce Clause Impact on 18 U.S.C. § 1591*, at 7, ECF no. 17 [hereinafter *Government's Briefing*]. The Government has not alleged that Mr. Lopez "transported, provided, advertised, . . . maintained, patronized, or solicited" Minor 1 for such purpose. *See* 18 U.S.C. § 1591(a)(1).

II.    **Mere presence or possession of foreign beer by a minor is insufficient to satisfy the interstate or foreign commerce element of 18 U.S.C. § 1591(a)(1) where beer is a common household item not inherently connected with sexual conduct, and there is no evidence that the beer at issue here was purchased for the purpose of providing it to the minor in connection with sex-trafficking activity.**

As a preliminary matter, Mr. Lopez notes that the Government has pointed to no authority in the First Circuit in support of its assertion that the interstate commerce clause element has been satisfied in this case. Defense counsel has likewise been unable to locate authority on point in the First Circuit.[3] However, in a case decided in the District of Puerto Rico, the court stated the general proposition that, under the interstate commerce clause, "Congress has the power to regulate activities that substantially affect interstate commerce," which includes the "power to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce." *United States v. Carrasquillo-Penaloza*, no. 12-728(PG), 2013 WL 1490085, at *3 (D.P.R. Apr. 10, 2013), quoting *Gonzalez v. Raich*, 545 U.S. 1, 17 (2005). For the interstate commerce requirement

---

[3] A search for cases citing 18 U.S.C. § 1591 which also include the term "interstate commerce" yielded few results, none of which addressed the application of the interstate commerce clause or foreign commerce clause to circumstances remotely similar to those alleged in this case.

of 18 U.S.C. § 1591 to be satisfied, "the conduct charged to the Defendant, when considered in the aggregate, [must] have the ability to affect interstate commerce." *Carrasquillo-Penaloza*, 2013 WL 1490085, at *4.

In a prosecution for violation of 18 U.S.C. § 1591 the Eastern District of Missouri, the District Court evaluated whether the Government alleged sufficient facts to satisfy the interstate commerce requirement of § 1591. *See United States v. Harrold*, no. 4:19CR627SNLJ(SPM), 2020 WL 1172207 (E.D. Mo. Feb. 4, 2020). In that case, the Judge deferred ruling on the jurisdictional question where the parties' substantial factual dispute would have required the Judge to make findings of fact prior to determining whether the interstate commerce clause had been implicated. *Id.* at *3. However, the Judge discussed that courts across multiple circuits have found that allegations of intrastate sex trafficking are insufficient to satisfy the interstate commerce requirement in § 1591, unless additional factors are present, such as "the crossing of state lines (by people, products, or other instruments used in connection with the trafficking), the use of the internet, the use of hotels or other public places, and other similar factors[.]" *Id*. at *4, citing *United States v. Corley*, 679 F. App'x 1, 6 (2d Cir. 2017); [4] *United States v. Rivera*, 558 F. App'x 971, 975

---

[4] In *United States v. Corley*, 679 F. App'x 1 (2d Cir. 2017), the interstate commerce requirement of § 1591 was satisfied by evidence that the defendant used the website, Backpage.com, to post advertisements featuring minor victims and a "stipulation that Backpage processed the advertisement payments in Massachusetts and hosted advertisements on a server in. *United States v. Harrold*, no. 4:19CR627SNLJ(SPM), 2020 WL 1172207 (E.D. Mo. Feb. 4, 2020), citing *Corley*, 679 F. App'x at 6.

(11th Cir. 2014);[5] *United States v. Willoughby*, 742 F.3d 229, 240 (6th Cir. 2014);[6] *United States v. Todd*, 627 F.3d 329, 333 (9th Cir. 2010);[7] *United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007).[8]

The cases cited in *Harrold*, taken together, as well as the grammatical structure of § 1591(a)(1) itself, stand for the proposition that the alleged act that affects interstate commerce must constitute or at least have a nexus to the alleged recruitment, enticement, harboring, transporting, provision, advertising, obtainment, maintenance, patronage, or solicitation of a minor for the purpose of engaging in a commercial sex act. If there is no nexus between the alleged act affecting interstate commerce and the alleged acts constituting sex trafficking, or in this case attempted sex trafficking, the jurisdictional requirement in § 1591 has not

---

[5] In *United States v. Rivera*, 558 F.App'x 971 (11th Cir. 2014), the interstate commerce requirement was satisfied by evidence that the defendant engaged in conduct regulated by Congress, i.e., sex trafficking of children, "coupled with other evidence that [the] defendant traveled from New York to Florida, used hotels that service interstate travelers for some of the prostitution dates, and used the internet and cell phones to coordinate dates." *Harrold,* 2020 WL 1172207, at *4, citing *Rivera*, 558 F. App'x at 975.

[6] In *United States v. Willoughby*, 742 F.3d 229 (6th Cir. 2014), the interstate commerce requirement was satisfied by evidence that the defendant "purchased condoms and clothes manufactured out of state *specifically for [the] victim to use while prostituting*" coupled with "evidence that the defendant used a Chinese-made cellphone *in furtherance of his sex trafficking activities*[,] tgheter with Congressional findings regarding the impact of trafficking on interstate commerce. *Harrold,* 2020 WL 1172207, at *4, citing *Willoughby*, 742 F.3d at 240 (emphases added).

[7] In *United States v.* Todd, 627 F.3d 329 (9th Cir. 2010), the interstate commerce requirement was satisfied by Congressional findings coupled with evidence that the sex trafficking alleged in the case "was conducted by advertising across state lines." *United States v. Harrold*, 2020 WL 1172207, at *4, citing *Todd*, 627 F.3d at 333.

[8] In *United States v. Evans*, 476 F.3d 1176 (11th Cir. 2007), the interstate commerce requirement was satisfied by Congressional findings on the impact of sex trafficking on interstate and foreign commerce "combined with evidence that [the] defendant used hotels that served interstate travelers and distributed condoms that traveled in interstate commerce." *United States v. Harrold*, 2020 WL 1172207, at *4, citing *Evans*, 476 F.3d at 1180,

been met.[9] *See United States v. Vargas*, 673 F. App'x 393, 395 (5th Cir. 2016) (describing interstate commerce requirement of § 1591 as "commerce clause *nexus* element" and noting that, "without that nexus, there can be no federal crime . . . under the statute" (emphasis added)).

Moreover, unlike in *Harrold*, this Court is not required to make findings of fact. The Government's burden at the probable cause stage is to show that "there is a 'fair probability,' based on the totality of the circumstances, that a defendant committed [all elements of] the '[violation] charged,'" not to pass on a defendant's factual guilt or innocence. *United States v. Wheeler-Watson*, 3:22-MJ-03245-KAR, 2022 WL 17976147, at *2 (D. Mass. Dec. 28, 2022), quoting *United States v. Mims*, 812 F.2d 1068, 1072 (8th Cir. 1987). Thus, this Court need only evaluate whether, with reasonable inferences drawn from the evidence presented, the Government has established a "fair probability" that Mr. Lopez engaged in sex trafficking of a minor in or affecting interstate or foreign commerce. Where the Government has not done so, this Court should conclude that the Government has failed to meet its burden.

As acknowledged by the Government, there appears to be no case law discussing the relationship between alcohol and sex trafficking. *See Government's Briefing*, at 4. Further, while the Government's cited authority support the proposition that the use of illicit drugs, *when sufficiently tied to the underlying alleged sex trafficking*, may satisfy the interstate commerce element of § 1591(a),

the Government has pointed to no authority suggesting that illicit drugs and alcohol are analogous in such an analysis. It cannot do so.

In the first instance, there generally is no legally permissible purpose for which one possess *illicit drugs*, the possession of which by almost any individual, is unlawful.[10] However, millions of Americans lawfully possess and consume alcohol.[11] *See* PennState Extension, *Alcoholic Beverage Consumption Statistics and Trends 2023* (Feb. 14, 2023), https://extension.psu.edu/alcoholic-beverage-consumption-statistics-and-trends-2023 (63% of U.S. adults aged 18 and older consumed alcohol during 2021-2022). It is a widespread facet of American life, completely unrelated from illicit sexual behavior.[12] To Counsel's knowledge, Congress has not made any findings regarding any association of alcohol, specifically beer, with illicit sexual conduct. By contrast, Congress has made findings as to the connection between illicit drugs, specifically date-rape drugs, and illicit sexual conduct. Hillory J. Farias and Samantha Reid Date-Rape Drug Prohibition Act of 2000, Pub. L. No. 106-172, 114 Stat. 7 (codified at 21 U.S.C. §§ 801-802, 827, 841, 960). *See also* Trafficking

---

[10] *See* 21 U.S.C. § 844 (providing criminal penalties for "simple possession" of a controlled substance, with limited exceptions not relevant here).

[11] Additionally, in Massachusetts, minors may consume alcohol if they are with their parents or legal guardian. *See* M.G.L. c. 138, § 34C.

[12] Modelo, the beer alleged to have been possessed by the minor in this case, was the top-selling beer brand in the United States in June 2023, when the conduct in this case is alleged to have occurred. Reuters, *Modelo Especial Tops Bud Light as Most-Sold Beer for Second Consecutive Month* (July 10, 2023), https://www.reuters.com/business/retail-consumer/modelo-especial-tops-bud-light-most-sold-us-beer-second-consecutive-month-2023-07-10/.

Victims' Protection Act, Pub. L. No. 106-386, 114 Stat. 1464 (codified at 22 U.S.C. §§ 7101-7115).

The Government has pointed to no authority suggesting that there is an inherent link between the possession or consumption of beer and commercial sex acts or other illicit conduct. As such, the Government has not established that the mere possession of foreign beer by a minor is sufficient to satisfy the interstate commerce requirement of § 1591 in the absence of a specific established nexus between such possession and the recruitment, enticement, harboring, transportation, provision, advertisement, obtainment, maintenance, patronage, or solicitation of that minor to engage in a commercial sex act. The Government has not established that there is probable cause to believe such nexus exists in this case.

The Government has cited to two cases where the possession by a minor of items manufactured out-of-state satisfied the interstate commerce element of § 1591.[13] Both are distinguishable from the circumstances alleged here. In *United States v. Flint*, 394 F. App'x 273, 275, 277 (6th Cir. 2010), the defendant transported a minor across state lines where he purchased drugs, clothing, hair extensions, and

---

[13] In its supplemental briefing, the Government also cites to two cases unrelated to § 1591, one concerning the robbery of goods purchased and sold in interstate commerce, *United States v. Elias*, 285 F.3d 183, 189 (2d Cir. 2002), and other concerning the robbery of an item (cash) used to purchase goods sold in interstate commerce, *United States v. Jones*, 30 F.3d 276, 285 (2d Cir. 1994). *See Government's Supplemental Briefing re Commerce Clause Impact on 18 U.S.C. § 1591*, at 1-2, ECF no. 18. The criminal conduct in those cases directly related to the goods in interstate commerce, *i.e.*, the robbery of such goods or the of the instrumentality used to purchase such goods, such that there was a sufficient nexus between the item in interstate commerce and the criminal conduct to satisfy the interstate commerce requirement in the statutes at issue in those cases. Here, the good in interstate commerce – the foreign beer – is, at most, incidental to the alleged criminal conduct. It does not come close to being the central object of the alleged criminal conduct at issue, as the goods in interstate commerce were in both *Elias* and *Jones*.

fake nails specifically for the minor and "arguably to further [the minor's] prostitution activity," and "rented a room in a hotel that serves out-of-state travelers." The court found that, together, all of these facts — the purchase of the out-of-state manufactured materials for the minor *and* their usage *for the purpose of* furthering "prostitution activity*" and* the transportation of the minor across state lines *and* the rental of a room in a hotel that serves out-of-state travelers — satisfied the interstate commerce element of 18 U.S.C. § 1591(a). *Id.* at 277, 278. Thus, in *Flint,* the court relied on significantly more factors than the possession of drugs by a minor to conclude that the interstate commerce element was satisfied. As a result, this case does not support the proposition that the mere possession of beer by a minor is sufficient to satisfy such requirement.

Similarly, in *United States v. Willoughby*, 742 F.3d 229, 232, 240 (6th Cir. 2014), the court found that a rational juror could have concluded that the sex trafficking in that case occurred in or affected interstate commerce where (1) the defendant "purchased condoms and clothes specifically for [the minor] to use while prostituting," all of which were manufactured out-of-state, (2) the defendant "used a Chinese-made cellphone in furtherance of his sex trafficking activities, and (3) Congress has "found that, in the aggregate, sex-trafficking activities 'substantially affect[] interstate commerce." *Id.* at 240, citing 22 U.S.C. § 7101(b)(12). Thus, as in *Flint*, the court in *Willoughby* required more than mere possession of certain items by the minor to find that the interstate commerce requirement of § 1591 had been satisfied. Critically, in both cases, the defendant purchased the items possessed by

the minor *specifically for the minor*, and specifically for the minor's use in the underlying sex trafficking activity. *Id.* at 240; *Flint*, 394 F. App'x at 277.

These cases are distinguishable from the current matter in several ways. As noted, in both *Flint* and *Willoughby*, the defendants had purchased the out-of-state items specifically *for* the minors to use during their sex-trafficking activities. *Flint*, 394 Fed. App'x at 275; *Willoughby*, 742 F.3d at 232, 240. In other words, the condoms, clothing, beauty items and drugs were each (1) purchased with the minor or explicitly for the minor's sole use in connection with sex trafficking activity; (2) were given to the minor for use in connection with sex trafficking activity; and (3) the minor did in fact use these items during the underlying sex trafficking activity. *Id.* None of these facts are present in the current matter.

Here, there is no evidence that the foreign beer was purchased for Minor 1 at all, let alone for Minor 1 and for the purpose of enticing, obtaining, recruiting, or harboring her to engage in a commercial sex act. There is evidence that there was foreign beer in Mr. Lopez's home. However, there is no evidence that the beer was purchased *for* Minor 1. Minor 1 stated that the beer "was already there at the home" when she arrived, meaning that no individual left the home to purchase the beer after her arrival. USAO000102. Minor 2 does not dispute this account. USAO000103. Additionally, Minor 2 described Mr. Lopez as "look[ing] drunk" on the night of the alleged conduct. *Id.* She further reported that he had "a lot of beer" and was "walking weird." *Id.* These statements suggest that the beer had been purchased, at least in part, for Mr. Lopez's personal consumption. There is no

evidence to suggest that at the time the beer was purchased, Mr. Lopez had any knowledge or intent that Minor 1 would come to his home. Therefore, there is no evidence that the beer was purchased for anyone other than those who resided in the home, namely Mr. Hernandez and Mr. Lopez, and there is no evidence that the foreign beer was purchased for the purpose of enticing, obtaining, recruiting, or harboring Minor 1 to engage in a commercial sex act.

Finally, even if Minor 1 did consume the beer, unlike in *Flint* and *Willoughby*, the minor did not use the product in connection with *any* sex act, let alone a commercial sex act. Notably, the Government's evidence is that Minor 1 has repeatedly and consistently denied sexual contact of any kind with Mr. Lopez. Minor 1 has also repeatedly denied any attempted sexual contact of any kind with Mr. Lopez.  Therefore, unliked in *Flint* or *Willoughby*, Minor 1 did not use the product manufactured out-of-state (beer) in connection with any commercial sex act.

Neither of these cases supports the Government's assertion that the mere possession of foreign beer by Minor 1 is sufficiently tied to the defendant's alleged sex trafficking activity such that it can serve to satisfy the interstate commerce element of § 1591, where the Government has not alleged the beer was purchased for the minor, let alone for the minor's use during alleged sex trafficking activity, where the Government has presented no evidence that the minor possessed the beer in connection with alleged sex-trafficking activity, and where the Government's evidence indicates lawful consumption of the beer by the defendant himself. Thus, even if the Court were to accept that the foreign beer is analogous at a very general

level to out-of-state manufactured items, the Government has failed present any evidence giving rise to probable cause that there is a sufficient nexus between the defendant's purchase of the beer or Minor 1's possession of the beer to the alleged sex-trafficking activity. Therefore, the Government has failed to demonstrate probable cause that the interstate commerce element of 18 U.S.C. § 1591(a)(1) has been satisfied.

**III.    The interstate commerce is not implicated in an alleged violation of 18 U.S.C. § 1591(a)(1) where the conduct at issue is alleged to have occurred in Mr. Lopez's residence and not a property rented for purposes of engaging in sex trafficking.**

The Government has alternatively argued that the interstate commerce element of § 1591 has been satisfied where Mr. "Lopez used a rental property to traffic Minor 1." *Government's Briefing*, at 6. As with its argument about foreign beer, the Government has cited to no First Circuit cases. Additionally, the sole case the Government does point to, *United States v. Vargas*, 673 F.App'x 393 (5th Cir. 2016), is inapposite. As discussed above, conduct attenuated from the underlying alleged criminal conduct cannot support a conclusion that the interstate commerce element in the relevant criminal statute has been satisfied. There must be a nexus between the act affecting interstate commerce and the underlying alleged criminal conduct. *See* Part II, above. Thus, the defendant's act of renting an apartment was *not* found by the *Vargas* court to satisfy the interstate commerce requirement of § 1591 simply because he rented an apartment for the purpose of residing there himself. Instead, it was found to satisfy the requirement where the defendant

rented the apartment *for the purpose of running a brothel business out of it. Vargas*, 673 F. App'x at 393. There are no such similar allegations in this case.

To the contrary, the Government has asserted that Mr. Lopez was renting a room in the Dorchester apartment so he could "move in," *i.e.*, reside there. *Government's Briefing*, at 7. The rental of an apartment as Mr. Lopez's personal and primary residence is likewise not analogous to the rental of a room in a hotel (a place of public accommodation) for the purpose of engaginh in commercial sexual activity. *See Flint*, 394 F. App'x at 275, 277 (defendant transported minor across state lines and rented room in hotel serving out-of-state travelers to further minor's prostitution activity); *Harrold*, 2020 WL 1172207, at *4 (describing hotel as "public place"). The Government has pointed to *no* authority for the proposition that a defendant's private residence – rented or purchased – where the rental or purchase of such property was for the purpose of the defendant lawfully residing there, and where the property was in fact so used as a defendant's primary residence, can serve as the predicate for finding that the interstate commerce requirement of § 1591 has been satisfied.

Moreover, the Government's argument that the interstate commerce element is met where Mr. Lopez's home is rented necessarily implies that, were Mr. Lopez a homeowner, the element would not be satisfied such that the alleged sex-trafficking activity in this case would not constitute a *federal* crime. But because Mr. Lopez is unable to afford to purchase his own home and must instead rent his home – which conduct is completely unrelated to the underlying sex-trafficking activity alleged

here – the Government argues that that same alleged activity is rendered a federal offense. There is no rational basis for the application of a federal criminal statute on the basis of whether one is a homeowner or whether one rents one's home, particularly where this country's history of racial discrimination in the sale of residential real estate has resulted in significant racial disparities in rates of home ownership –including specifically in Boston. *See Shelley v. Kraemer*, 334 U.S. 1, 20 (1948) (holding racially restrictive covenant designed to exclude persons of designated race or color from home ownership to be unenforceable); NPR, *Racial Covenants, A Relic of the Past, Are Still on the Books Across the Country* (Nov. 17, 2021), https://www.npr.org/2021/11/17/1049052531/racial-covenants-housing-discrimination (despite the Court's 1948 ruling in *Shelley v. Kraemer*, racially restrictive covenants remain widespread on property's and in homeowner's associations throughout the country). *See also* Richard Rothstein*, The Color of Law* at 107-109 (2017) (discussing "redlining," or policy of banks to refuse to insure mortgages in or near African-American neighborhoods); Federal Reserve Bank of Boston, *The Color of Wealth in Boston* (Mar. 25, 2015), https://www.bostonfed.org/publications/one-time-pubs/color-of-wealth.aspx ("[C]lose to 80% of whites [in Boston] own a home, whereas only one-third of U.S. [B]lack[ persons], less than one-fifth of Dominicans and Puerto Ricans, and only half of Caribbean [B]lack[ persons] are homeowners."). As such, the application of § 1591 to Mr. Lopez, a man of Latino heritage, on the basis that he does not own his own home, would be a proxy for the impermissible application of such statute on the

basis of his race or ethnicity, in violation of the Equal Protection Clause of the Fifth
Amendment to the United States Constitution.

IV.    **The statement, "I will pay you after" is insufficient to meet the definition of "commercial sex act" as set forth in 18 U.S.C. § 1591(e)(3) in the absence of any overt action on the part of the defendant.**

As discussed, a "commercial sex act" is defined for purposes of 18 U.S.C.
§ 1591(a)(1) as "any sex act, on account of which anything of value is given to or
received by any person." 18 U.S.C. § 1591(e)(3). Where Mr. Lopez is charged with
violating 18 U.S.C. § 1591(a)(1) by attempting to engage in sex trafficking of a
minor, the Government, at this stage, must establish, in part, a "fair probability"
that Mr. Lopez attempted to engage in a commercial sex act. *See Wheeler-Watson*,
2022 WL 17976147, at *2.

Attempt requires, at minimum, that "with the intent of committing a
particular crime, [Mr. Lopez] perform[ed] some overt act in furtherance of the
[alleged] criminal scheme." *United States v. Rivera-Sola*, 713 F.2d 866, 869 (1st Cir.
1983).   Thus, the Government, at this stage, must show that there is a fair
probability that Mr. Lopez intended to engage in a commercial sex act and that he
took some overt act in furtherance of completing a commercial sex act. "Mere
intention to commit a crime can never amount to attempt." *Id.* Further, an act of
"mere preparation" is insufficient. *Id.* The overt act must be a "substantial step"
towards the completion of the crime. *Id.*

Here, the only evidence of a commercial sex act is Mr. Lopez's alleged
statement, "I will pay you after." The Government has presented no evidence from

15

which a reasonable inference can be made that Mr. Lopez, in addition to allegedly making such statement, took any overt action towards engaging in a sex act with Minor 1.  Thus, the statement is a mere statement of intent and, without more, does not support a finding of probable cause that Mr. Lopez attempted to engage in a commercial sex act with Minor 1. Where the Government has not presented any evidence that Mr. Lopez took a "substantial step" towards the completion of a commercial sex act, it has not carried its burden to establish probable cause to believe that Mr. Lopez attempted to commit sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and 18 U.S.C. § 1594(a).

## Conclusion

Where the Government has failed to meet its burden to demonstrate probable cause that the interstate commerce requirement of § 1591 has been met or that Mr. Lopez attempted to engage in a commercial sex act with Minor 1, the court should conclude that the complaint against him is unsupported by probable cause and must be dismissed.

Respectfully Submitted
CARLOS LOPEZ
By his attorney,

/s/ Jessica D. Hedges
Jessica D. Hedges
BBO #645847
Hedges & Tumposky, LLP
88 Broad Street, Suite 101
Boston, MA 02110
(617) 722-8220

## CERTIFICATE OF SERVICE

I, Jessica Hedges, hereby certify that a true copy of the above document was served on all counsel of record, through the electronic filing system, on October 12, 2023.

/s/ Jessica D. Hedges
Jessica D. Hedges